SHAWN G. HANSEN (SBN 197033)
shansen@nixonpeabody.com
SETH D. LEVY (SBN 217638)
slevy@nixonpeabody.com
STACI JENNIFER RIORDAN (SBN 232659)
sriordan@nixonpeabody.com
VINCENT K. YIP (SBN 170665)
vyip@nixonpeabody.com
PETER J. WIED (SBN 198475)
pwied@nixonpeabody.com
VINCENT C. CAPATI (SBN 331868)
vcapati@nixonpeabody.com
**NIXON PEABODY LLP**
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Telephone: (213) 629-6000
Facsimile: (213) 629-6001

Attorneys for Plaintiff
**THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE REGENTS OF THE UNIVERSITY OF CALIFORNIA**,<br><br>Plaintiff,<br><br>vs.<br><br>**THE HOME DEPOT, INC., HOME DEPOT PRODUCT AUTHORITY, LLC, and HOME DEPOT U.S.A., INC.**,<br><br>Defendants. | Case No. 2:20-cv-7943<br><br>**COMPLAINT FOR WILLFUL PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff The Regents of the University of California ("The Regents") alleges as follows for its Complaint against Defendants The Home Depot, Inc., Home Depot Product Authority, LLC, and Home Depot U.S.A., Inc. (collectively, "Home Depot"):

## INTRODUCTION

1.    This is an action for patent infringement arising under 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.    This case is about protecting the reinvention of the light bulb by a Nobel laureate-led team at the University of California, Santa Barbara ("UC Santa Barbara"), the theft of that technology by unlicensed foreign manufacturers, and Home Depot's trafficking in infringing imports without proper compensation to The Regents.

3.    Specifically, at issue is Home Depot's infringement of The Regents' United States Patents 9,240,529 ("'529 patent"), 9,859,464 ("'464 patent"), 10,593,854 ("'854 patent"), 10,644,213 ("'213 patent"), and 10,658,557 ("'557 patent") (collectively, the "Asserted Patents"), which are fundamental to a new generation of light bulbs commonly referred to as "filament" LED light bulbs.

4.    As illustrated in the images below, which begin with images of a Feit Vintage ST19, 11W/75W, Warm Light, Dimmable, Clear Glass, Medium Base E27 (Store SKU #1004534844) (UPC #017801 181388) purchased from Home Depot that is charted in Exhibits L–P and include other images of filament LED products sold by Home Depot and other retailers, filament LEDs are consistent in the structures relevant to infringement across retailers, suppliers, and other sources. This reflects the commoditization of filament LEDs and, accordingly, the representativeness of the Accused Product that is charted in Exhibits L-P with respect to other Accused Products (as defined below).

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FEIT VINTAGE ST19
11W/75W, Warm Light, Dimmable, Clear Glass, Medium Base E27 (Store SKU #1004534844) (UPC #017801 181388)



## PHILIPS ST19
5W/40W, Amber Light, Dimmable, Vintage Glass, Medium Base E26 (Store SKU #1004856101) (UPC #046677 556808)



- 2 -

**COMPLAINT**

## SATCO S29876 7W/60W A19 LED
Soft White, Dimmable, Medium Base, 6-Pack (Item Model No. S29876)



## IKEA SILLBO LED 140 LM
Globe Mirrored Top Silver Colored, 5", 1.4W, E26 LED1806G2 (Article No. 104.501.82)



**COMPLAINT**

## GE REFRESH CA11 CANDLE
Bent Tip Shape, 5.5W/60W, Daylight, Dimmable, Clear Finish, CAC Candelabra Base E12, 3 Pack (item no. 829150)





## GE VINTAGE A19
5W/60W, Amber, Dimmable, Medium Base E26 (item no. 952501)





**COMPLAINT**

1    5.    The Regents brings this Complaint to spearhead a broader, national

2  response to the existential threat to university technology transfer that is posed by

3  the widespread disregard for university patent rights that is prevalent today.

4    6.    Universities and research institutions across the country have

5  established technology transfer offices to identify, protect, and license the

6  intellectual property developed by their faculty, students, and other researchers.

7  These offices sit at the interface between academia and the private sector.  They

8  leverage an interdisciplinary collection of skills to transform the fruits of a

9  university's research into commercial products and services by establishing and

10 nurturing relationships between the university, where the research is conducted, and

11 entities in the private sector, which manufacture and sell products embodying the

12 university's research.  While as much an art as it is a science, the success of any

13 technology transfer program is predicated on the private sector respecting the

14 university's intellectual property rights.

15    7.    However, overseas manufacturers routinely take unfair advantage of

16 academic openness.  They exploit university intellectual property abroad with

17 impunity and then traffic infringing goods into the U.S. market through what are

18 often complex supply chains.  By flooding the domestic market with unauthorized

19 products, they cripple the ability of technology transfer programs to effectively

20 license universities' intellectual property.  This undermines the universities' rightful

21 opportunity to share in the revenue generated through commercialization of their

22 intellectual property – revenue that would support further research, education, and

23 development of cutting-edge technologies and new scientific insights that benefit

24 the public.

25    8.    This case is a classic example of that very scenario.  The Regents has

26 expended and continues to expend significant resources to engineer, research,

27 develop, and license the inventions that are the subject of this case, only to see

28 those inventions stolen by unlicensed foreign manufacturers, imported into the

**COMPLAINT**

1    U.S., and sold to an unwitting domestic consuming public by retailers that have the

2    power to require their supply chains to respect The Regents' intellectual property

3    but have not done so.

4        9.    Filament LED light bulbs may include a variety of filament LED

5    configurations while still infringing the Asserted Patents, such as, without

6    limitation, different shapes of filaments (*e.g.*, spiral instead of linear), different

7    numbers of filaments, different lengths of filaments, and different materials as

8    submounts for LEDs in filaments, such as monocrystalline sapphire, polycrystalline

9    sapphire (also known as polycrystalline alumina), and polyimide/polyetherimide.

10   All such configurations are included in the term "filament LED" as used in this

11   Complaint. Examples of products containing filament LEDs include, but are not

12   limited to, lighting fixtures that are installed or otherwise used in residential,

13   commercial, or industrial settings that include infringing filament LEDs, such as,

14   without limitation, ceiling fans and fixtures, table lamps, wall sconces and walkway

15   lighting, as well as other lighting products, such as string lights, nightlights and

16   novelty items.

17       10.   As reflected in the images in Paragraph 4 above, The Regents has

18   obtained and analyzed samples of filament LED light bulbs across a variety of

19   retailers and brands, including but not limited to Home Depot. All filament LED

20   products The Regents has analyzed to date infringe at least one claim of the

21   Asserted Patents. Accordingly, The Regents is informed and believes that filament

22   LEDs have been commoditized by mass unlicensed manufacture and that

23   substantially all filament LED light bulbs from unlicensed sources infringe at least

24   one claim of the Asserted Patents.∗

25       11.   The Regents brings this Complaint seeking just compensation for the

26   use of the inventions claimed in the Asserted Patents consistent with The Regents'

27

28   ∗Asterisks indicate allegations made upon information and belief.

**COMPLAINT**

1    duty to serve as trustee for the people of the State of California and as steward of

2    the University of California in fulfillment of its educational, research, and public

3    service missions in the best interests of the people of the State of California.

4                        **BACKGROUND OF FILAMENT LED LIGHT BULBS**

5           12.    The invention of the incandescent light bulb more than a century ago

6    so profoundly changed the world that the light bulb became the very icon of

7    invention. Reflecting Thomas Edison's enduring fame for inventing the light bulb,

8    many products on the market today that infringe the Asserted Patents are called

9    "Edison" or "vintage" LED light bulbs because they resemble Edison's iconic light

10   bulbs with glowing filaments visible inside glass bulbs.

11          13.    The patented filament LED technology invented at UC Santa Barbara

12   enables light bulbs that replace traditional incandescent light bulbs and, in contrast,

13   use a tiny fraction of the energy, don't get hot, break less easily, and last up to ten

14   or twenty years. Further, unlike compact fluorescent light bulb substitutes for

15   incandescent light bulbs, the patented filament LED technology does not contain

16   the toxic material mercury.*

17          14.    Over the life of a filament LED light bulb, the inventions of the

18   Asserted Patents yield savings in energy and replacement costs, relative to

19   comparable incandescent light bulbs, that far exceed the cost of the filament LED

20   light bulb itself.*

21          15.    Moreover, compared with other LED light bulb designs, filament LED

22   light bulbs are more energy efficient and aesthetically pleasing due to the

23   advantages conferred by the inventions of the Asserted Patents.*

24          16.    The United States retail market has demonstrated tremendous

25   customer demand for the aesthetic, economic, and environmental benefits conferred

26   by the inventions of the Asserted Patents: while filament LED light bulbs only

27   became widely available in the United States in about 2014 or 2015, sales of

28   filament LED light bulbs was expected to exceed $1,000,000,000 in the United

**COMPLAINT**

1   States in 2019.*

2       17.    Unfortunately, the filament LED light bulb industry has stolen The

3   Regents' patented technology with utter disregard for The Regents' patent rights.

4   Substantially all of the infringing filament LED light bulbs The Regents has found

5   on the retail market in the United States reflect China as the country of origin.

6       18.    For that reason, among others, The Regents seeks relief in this case for

7   retail sales of infringing filament LED light bulbs in the United States, where

8   consumers pay a premium over comparable incandescent light bulbs because of the

9   benefits of the inventions claimed in the Asserted Patents. As a major retailer in the

10   United States, Home Depot has the means and responsibility to ensure the

11   compliance of their supply chain with applicable laws. However, Home Depot has

12   not upheld that responsibility with respect to filament LED light bulbs and instead

13   have provided an illegal outlet for infringing products from unlicensed foreign

14   sources, depriving The Regents of compensation to which it is lawfully entitled for

15   the use of the inventions claimed in the Asserted Patents.

16   **PARTIES**

17       19.    The Regents is a California constitutional corporation with a principal

18   place of business in Oakland, California, and is the owner of all substantial rights in

19   the Asserted Patents. The Regents is charged with the duty of administering the

20   University of California as a public trust, pursuant to Article IX Section 9 of the

21   California Constitution. UC Santa Barbara is an internationally recognized

22   pioneering research institution located in the Central District of California and is

23   one of the ten campuses that make up the University of California System. All

24   University of California actions are done in The Regents' name, including owning

25   property such as patents and other intellectual property and entering into contracts.

26       20.    The Home Depot, Inc. is a corporation organized under the laws of

27   Delaware with corporate headquarters in Atlanta, Georgia, and having physical

28   retail stores in California.* The Home Depot, Inc. imports the Accused Products

- 8 -

**COMPLAINT**

into the United States and distributes, offers for sale, and sells them at Home Depot retail stores and at the Home Depot retail website in the United States, including in the Central District of California.* The Home Depot, Inc. may be served through its registered agent for service of process at CSC of Cobb County, Inc., 192 Anderson Street S.E., Suite 125, Marietta, GA 30060.

21.    Home Depot Product Authority, LLC is a limited liability company organized under the laws of Georgia with corporate headquarters in Atlanta, Georgia, and with physical distribution center facilities in California.* Home Depot Product Authority, LLC. imports the Accused Products into the United States and distributes, offers for sale, and sells them at Home Depot retail stores and at the Home Depot retail website in the United States, including in the Central District of California.* Home Depot Product Authority, LLC is registered to do business in California and may be served through its registered agent for service of process at CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

22.    Home Depot U.S.A., Inc. is a corporation organized under the laws of Delaware with corporate headquarters in Atlanta, Georgia, and with physical distribution center facilities in California.* Home Depot U.S.A., Inc. imports the Accused Products into the United States and distributes, offers for sale, and sells them at Home Depot retail stores and at the Home Depot retail website in the United States, including in the Central District of California.* Home Depot U.S.A., Inc. is registered to do business in California and may be served through its registered agent for service of process at CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

23.    The Home Depot, Inc., Home Depot Product Authority, LLC, and Home Depot U.S.A., Inc. are each individually liable and are jointly and severally liable for infringement of the Asserted Patents. Under theories of alter ego, single business enterprise liability, and agency, the conduct of each can be attributed to

**COMPLAINT**

and considered the conduct of the others for purposes of infringement of the Asserted Patents. The Home Depot, Inc., Home Depot Product Authority, LLC, and Home Depot U.S.A., Inc. have in the past and continue to hold themselves out as a single entity – "Home Depot" – acting in concert, with knowledge of each other's actions and control over each other.

## JURISDICTION AND VENUE

24.     As alleged in Paragraph 1 pursuant to Central District of California L.R. 8-1, this Court has original and exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

25.     This Court has personal jurisdiction over Home Depot because its contacts with the Central District of California are significant and pervasive and directly give rise to part of this dispute. Home Depot has numerous regular and established distribution and retail facilities located throughout California, including in the Central District of California.

26.     Venue is proper in the Central District of California under 28 U.S.C. § 1400(b) because Home Depot has engaged in infringement of the Asserted Patents, and have numerous regular and established retail locations throughout the Central District of California. For example, attached as Exhibits A1 and A2 are copies of receipts for infringing sales by Home Depot retail stores at Store 6629, 1625 South Mountain Avenue, Monrovia, CA 91016; and at Store 6654, 1200 Flower Street, Burbank, CA 91502.

## UC SANTA BARBARA'S WORLD CLASS LED RESEARCH

27.     UC Santa Barbara proudly counts among its current and late faculty six Nobel Laureates, one Fields Medal recipient, twenty-nine members of the National Academy of Sciences, twenty-seven members of the National Academy of Engineering, and thirty-one members of the Academy of Arts and Sciences. UC Santa Barbara receives over $180,000,000 per year to support its research efforts from both public and private sources.

**COMPLAINT**

28.     UC Santa Barbara also is the home of a world-renowned Materials Department that is dedicated to solving tomorrow's problems in electronic and photonic materials, inorganic materials, macromolecular and biomolecular materials, and structural materials. UC Santa Barbara's Materials Department has consistently ranked in the top two in the nation in various studies, including by the National Research Council and U.S. News & World Report. In addition, according to Thomson Reuters, Materials research at UC Santa Barbara ranks second in the world in terms of citation impact—a method for comparing the quality of research. The citing of a scholar's research (as represented by a published scientific paper) in another researcher's published work is viewed as a strong indication of the importance of the original work and the influence it might have.

29.     UC Santa Barbara's Materials Department has nine separate affiliated research centers, including the California NanoSystems Institute, the Center for Multifunctional Materials and Structures, the Center for Stem Cell Biology and Engineering, the Dow Materials Institute, the Institute for Collaborative Biotechnologies, the Institute for Energy Efficiency, the Materials Research Laboratory, the Mitsubishi Chemical Center for Advanced Materials, and the Solid State Lighting and Energy Electronics Center ("SSLEEC").

30.     SSLEEC is the home of nearly two decades of visionary research into solid state lighting and power switching. Recognizing the need for energy-efficient lighting technologies, The Regents, along with industry partners, has funded groundbreaking research at SSLEEC and its predecessor entities that have led to more energy-efficient solutions for lighting, cell phones, computers, appliances, automobiles, industrial equipment, and power distribution systems. SSLEEC research helps solve some of the world's most critical problems by meaningfully reducing energy consumption and waste associated with light bulbs and other necessities of daily life.

**COMPLAINT**

31.    SSLEEC consists of approximately a dozen faculty members, thirty graduate students, and twenty staff, including internationally recognized researchers and visiting scholars. The faculty and staff of SSLEEC and its predecessors have published thousands of peer-reviewed publications and have amassed a portfolio of over 250 issued patents. Since its inception, SSLEEC has conferred approximately 100 Ph.D. degrees.

32.    Professor Shuji Nakamura is a tenured professor at UC Santa Barbara, a co-Director of SSLEEC, and an inventor of each of the Asserted Patents. In 2014, Professor Nakamura was honored as the co-recipient of the Nobel Prize in Physics. He began researching high-efficiency blue LEDs (which are necessary to create white light with LEDs) in the late 1980's, and his former employer began selling white LEDs enabled by his invention in the mid-1990's. In addition to the 2014 Nobel Prize in Physics, Professor Nakamura has received numerous other awards for his work in the field of LED lighting, including the Nishina Memorial Award (1996), the Materials Research Society Medal Award (1997), the Institute of Electrical and Electronics Engineers Jack A. Morton Award (1998), the British Rank Prize (1998), the Benjamin Franklin Medal Award (2002), the Millennium Technology Prize (2006), the Czochralski Award (2007), the Prince of Asturias Award for Technical Scientific Research (2008), The Harvey Award (2009), and the Technology & Engineering Emmy Award (2012) awarded by The National Academy of Television Arts & Sciences (NATAS). He was elected as a fellow of the U.S. National Academy of Engineering in 2003. He received the 2014 Order of Culture Award in Japan and was inducted into the National Inventors Hall of Fame in 2015. That same year, Professor Nakamura received the Charles Stark Draper Prize for Engineering and the Global Energy Prize in Russia. In July 2016, he was elected to Academia Sinica, Taiwan's preeminent research institution. Professor Nakamura has been a professor at UC Santa Barbara since 2000 and is an inventor

**COMPLAINT**

of more than 200 United States patents in addition to over 175 Japanese patents. He has published over 550 papers in his field.

33.     Professor Steven DenBaars is a tenured professor at UC Santa Barbara, a co-Director of SSLEEC, and an inventor of each of the Asserted Patents. Professor DenBaars is The Mitsubishi Chemical Professor in Solid State Lighting & Display at UC Santa Barbara. Prior to UC Santa Barbara, he was an engineer at Hewlett-Packard Optoelectronics, where he contributed to the growth and fabrication of visible LEDs, focusing specifically on high brightness red LEDs. He joined UC Santa Barbara in 1991 and helped pioneer the field of solid-state lighting, including the first United States university demonstration of a Blue Gallium Nitride laser diode. Professor DenBaars is the recipient of the National Scientist Foundation Young Investigator Award (1994), the Institute of Electrical and Electronics Engineering Fellow Award (2005) and the IEEE Aron Kressel Award (2010). Professor DenBaars is a fellow of the National Academy of Engineering (NAE) and the National Academy of Inventors (NAI). He has published over 800 papers and is an inventor of over 175 patents.

34.     Professor James Speck co-founded SSLEEC with Professors Shuji Nakamura and Steven DenBaars and is an inventor of one of the Asserted Patents. Professor Speck has been a member of the UC Santa Barbara faculty since 1990. He holds the Seoul Semiconductor Chair in Solid State Lighting at UC Santa Barbara. Professor Speck is a member of the Materials Research Society, the American Physical Society, and the Microscopy Society of America. Professor Speck received the Quantum Device Award from the International Symposium on Compound Semiconductors in 2007, was named an inaugural Materials Research Society Fellow in 2008, and received the Japanese Journal of Applied Physics Best Paper Award in 2008. In 2009, he became an American Physical Society Fellow. In 2010, he received the IEEE Photonics Society Aron Kressel Award for his work on nonpolar and semipolar Gallium Nitride-based materials and devices. Professor

**COMPLAINT**

1  Speck has authored over 600 papers and is an inventor of over 100 patents.

2      35.    Research at SSLEEC and its predecessor entities has resulted in major

3  technological breakthroughs in the field of solid state lighting. This research has

4  also led to numerous successful startup companies that have created hundreds of

5  jobs.

6      36.    For example, in 2007, researchers at SSLEEC's predecessor fabricated

7  a gallium nitride-based LED with the highest efficiency and output power ever

8  reported at the time. They achieved this feat by developing an LED based on non-

9  polar gallium nitride, which has a crystal structure arranged in the m-plane, rather

10 than the conventional c-plane gallium nitride LEDs known at the time. These non-

11 polar gallium nitride LEDs were more efficient and able to handle higher currents

12 than anything available at the time.

13     37.    As another example, in 2012, researchers at SSLEEC's predecessor

14 achieved the world's first violet non-polar vertical-cavity surface-emitting laser

15 ("VCSEL"), which was based on m-plane gallium nitride semiconductors. These

16 VCSELs were able to operate at room temperature and provide high optical gain,

17 which increases optical efficiency. This breakthrough also could result in greatly

18 reduced manufacturing costs, to be used in a variety of applications including

19 lighting, displays, sensors, and any technology that requires energy efficiency and a

20 small form-factor.

21     38.    Additionally, in 2013, SSLEEC researchers, including Professor

22 DenBaars, developed guidelines to make it possible to optimize phosphors—a key

23 component in white LED lighting—allowing for brighter, more efficient lights.

24 This breakthrough put high-efficiency, high-brightness, solid-state lighting on a fast

25 track.

26     39.    The filament LED technology covered by the Asserted Patents is

27 another example of the results of SSLEEC's groundbreaking research. The Asserted

28 Patents cover some of the important innovations of Professors Nakamura,

- 14 -

**COMPLAINT**

DenBaars, and Speck, including those that use transparent LED structures and packaging to enable filament LED light bulbs.

## ASSERTED PATENTS

40.     On January 19, 2016, the United States Patent and Trademark Office duly and properly issued the '529 patent, which is entitled "Textured Phosphor Conversion Layer Light Emitting Diode". The Regents owns by assignment all rights, title, and interest in the '529 patent. A true and correct copy of the '529 patent is attached as Exhibit B to this Complaint.

41.     On January 2, 2018, the United States Patent and Trademark Office duly and properly issued the '464 patent, which is entitled "Light Emitting Diode With Light Extracted From Front And Back Sides Of A Lead Frame". The Regents owns by assignment all rights, title, and interest in the '464 patent. A true and correct copy of the '464 patent is attached as Exhibit C to this Complaint.

42.     On March 17, 2020, the United States Patent and Trademark Office duly and properly issued the '854 patent, which is entitled "Transparent Light Emitting Device with Light Emitting Diodes". The Regents owns by assignment all rights, title, and interest in the '854 patent. A true and correct copy of the '854 patent is attached as Exhibit D to this Complaint.

43.     On May 5, 2020, the United States Patent and Trademark Office duly and properly issued the '213 patent, which is entitled "Filament LED Light Bulb". The Regents owns by assignment all rights, title, and interest in the '213 patent. A true and correct copy of the '213 patent is attached as Exhibit E to this Complaint.

44.     On May 19, 2020, the United States Patent and Trademark Office duly and properly issued the '557 patent, which is entitled "Transparent Light Emitting Device with Light Emitting Diodes". The Regents owns by assignment all rights, title, and interest in the '557 patent. A true and correct copy of the '557 patent is attached as Exhibit F to this Complaint.

**COMPLAINT**

1

**ACCUSED PRODUCTS**

2      45.     Home Depot uses, sells, offers to sell, and/or imports a wide variety of

3   products including filament LEDs that infringe the Asserted Patents, including but

4   not limited to those listed in this Complaint, the comprehensive identification of

5   which will be the subject of discovery from Home Depot. To the extent not

6   supplied to Home Depot by a licensee of The Regents within the scope of a license,

7   each product listed below, which are reflected on the receipts attached as Exhibits

8   A1 and A2, and every other product that includes a filament LED component not

9   more than colorably different from the filament LED components in the products

10  listed below (collectively, the "Accused Products"), meets each and every

11  limitation of at least one claim of each of the Asserted Patents, literally or by

12  equivalents:*

13  • Ecosmart brand Accused Products:

14      o   Ecosmart, ST19, 3.2W/40W, Daylight, Dimmable, Clear Glass,

15          Medium Base E26, 2-Pack (Store SKU #1002914725) (UPC #819261

16          020036);

17      o   Ecosmart, ST19, 3.2W/40W, Soft White, Dimmable, Clear Glass,

18          Medium Base E26, 2-Pack (Store SKU #1002914737) (UPC #819261-

19          020005);

20      o   Ecosmart, ST19, 8.5W/75W, Soft White, Dimmable, Clear Glass,

21          Medium Base E26, 2-Pack (Store SKU #1004865468) (UPC #840072

22          807691); and

23      o   Ecosmart, ST19, 8.5W/75W, Daylight, Dimmable, Clear Glass,

24          Medium Base E26, 2-Pack (Store SKU #1004865464) (UPC #840072

25          807721);

26  • Feit brand Accused Products:

27      o   Feit Enhance, A19, 5W/40W, Soft White, Dimmable, Clear Glass,

28          Medium Base E26, 2-Pack (Store SKU #1002975918) (UPC #017801

**COMPLAINT**

1        153606);

2     o   Feit Enhance, A19, 9W/60W, Soft White, Dimmable, Clear Glass,

3         Medium Base E26, 2-Pack (Store SKU #1002975928) (UPC #017801

4         153644);

5     o   Feit Enhance, A19, 9W/60W, Bright White, Dimmable, Clear Glass,

6         Medium Base E26, 2-Pack (Store SKU #1003318408) (UPC #017801

7         156690);

8     o   Feit Enhance, A21 15W/100W, Soft White, Dimmable, Medium Base

9         E26, 2-Pack (Store SKU #1002975920) (UPC #017801 154634);

10    o   Feit Enhance, A19, 9W/60W, Daylight, Dimmable, Clear Glass,

11        Medium Base E26, 2-Pack (Store SKU #1002975939) (UPC #017801

12        153668);

13    o   Feit Vintage, ST19, 9W/60W, Warm Light, Dimmable, Amber Glass,

14        Medium Base E27 (Store SKU #1004534845) (UPC #017801

15        181371);

16    o   Feit Vintage, ST19, 6.5W/40W, Warm Light, Dimmable, Amber

17        Glass, Medium Base E26 (Store SKU #1002421458) (UPC #017801

18        179354);

19    o   Feit Vintage ST19, 11W/75W, Warm Light, Dimmable, Clear Glass,

20        Medium Base E27 (Store SKU #1004534844) (UPC #017801

21        181388);

22    o   Feit Vintage, ST19, 6.5W/40W, Warm Light, Dimmable, Clear Glass,

23        Medium Base E26 (Store SKU #1002428575) (UPC #017801

24        179446);

25    o   Feit, A19 IntelliBulb Dusk to Dawn, 8.8W/60W, Clear Daylight, Non-

26        Dimmable, Medium Base E26 (Store SKU #1004454111) (UPC

27        #017801 172300);

28    o   Feit, A19, 8.8W/60W, Soft White, Dimmable, Frosted Glass, Medium

- 17 -

**COMPLAINT**

Base E26, 4-Pack (Store SKU # 1004244149) (UPC #017801 156751); and

o  Feit, A19, 8.8W/60W, Daylight, Dimmable, Frosted Glass, Medium Base E26, 4-Pack (Store SKU # 1004244148) (UPC #017801 156829);

- Cree branded Accused Products

  o  Cree, B11, 4W/40W, Daylight, Dimmable, Candelabra Base E12, 2-Pack (Store SKU #1004871333) (UPC #849665 036579); and

  o  Cree, B11 Blunt Tip, 6.5/75W, Soft White, Dimmable, Candelabra Base E12, 2-Pack (Store SKU #1004871617) (UPC #849665 036609)

- Philips brand Accused Products

  o  Philips, A19 Smart Wi-Fi, 6W/40W, Amber, Dimmable, Medium Base E26 (Store SKU #1004547925) (UPC #046677 555528);

  o  Philips, A19 Smart Wi-Fi, 5W/40W, Soft White, Dimmable, Medium Base E26 (Store SKU #1004547927) (UPC #046677 555511);

  o  Philips ST19 Smart Wi-Fi, 3.8W/40W, Soft White, Dimmable, Medium Base E26 (Store SKU #1004547926) (UPC #046677 555559);

  o  Philips ST19, 5W/40W, Amber Light, Dimmable, Vintage Glass, Medium Base E26 (Store SKU #1004856101) (UPC #046677 556808);

  o  Philips, ST19, 8.8W/60W, Daylight, Dimmable, Vintage Glass, Medium Base E26 (Store SKU #1004806978) (UPC #046677 556549);

  o  Philips, ST19, 8W/60W, Soft White, Dimmable, Vintage Glass, Medium Base E26 (Store SKU #1004806977) (UPC #046677 556532);

  o  Philips 7.5W/40W Equivalent A50 Dimmable Vintage Glass Edison LED Large Light Bulb, Amber Light, E26 Medium Base (Store SKU

- 18 -

**COMPLAINT**

#1003524903) (UPC # 046677 536275); and

    o   Philips 7.5W/40W Equivalent T20 Dimmable Vintage Glass Edison LED Large Light Bulb, Amber Light, E26 Medium Base (Store SKU #1003524902) (UPC #046677 536282).

46.    The Ecosmart brand is Home Depot's private label brand, and Home Depot has control over the design, manufacturing, sourcing of components, importation, offers for sale, and sales of Ecosmart Accused Products.* By way of example, Home Depot Product Authority, LLC and an affiliated entity own the ECOSMART trademark for lighting products. *See* Reg. Nos. 3562032, 4656352, and 5119881.

47.    The Regents needs discovery from Defendants to identify all of the Accused Products that Home Depot has used, offered to sell, sold, or imported into the United States and for which The Regents seek relief in this case. For the avoidance of doubt, filament LED products that are supplied to Home Depot by suppliers acting within the scope of a license to the Asserted Patents from The Regents are not accused of infringement in this action.

48.    Each of the Accused Products listed above is labeled on the product or packaging "Made in China".

**DEFENDANTS' ACTUAL KNOWLEDGE OF ASSERTED PATENTS**

49.    Defendants had actual knowledge of the existence of the '529 patent no later than January 12, 2018 through The Regents' December 20, 2017 letter to Home Depot attached as Exhibit G, the certified mail receipt attached as Exhibit H, Home Depot's January 12, 2018 letter acknowledging The Regents' letter attached as Exhibit I, The Regents' October 7, 2019 "Second Notice of Patent Infringement and Invitation to License" letter attached as Exhibit J, and Home Depot's November 1, 2019 letter acknowledging The Regents' letter attached as Exhibit K.

50.    Defendants had actual knowledge of the existence of the '464 patent no later than October 7, 2019 through The Regents' "Second Notice of Patent

**COMPLAINT**

Infringement and Invitation to License" letter to Home Depot attached as Exhibit J, and Home Depot's November 1, 2019 letter acknowledging The Regents' letter attached as Exhibit K.

51.     Pursuant to 35 U.S.C. § 287(a), the filing of this action also constitutes actual notice to Defendants of the Asserted Patents and the manner of their infringement thereof.

**CLAIM I: INFRINGEMENT OF THE '529 PATENT**

52.     The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 51 as if fully set forth herein.

53.     Home Depot has infringed at least one claim of the '529 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with using, offering to sell, selling, and/or importing into the United States the Accused Products.

54.     Attached as Exhibit L is a claim chart demonstrating infringement of the '529 patent by a representative Accused Product sold by Home Depot, namely, the Feit Vintage ST19, 11W/75W, Warm Light, Dimmable, Clear Glass, Medium Base E27 (Store SKU #1004534844) (UPC #017801 181388). Exhibit L is for illustrative pleading purposes only and is not intended to limit the patent claims asserted or the Accused Products at issue in this case. Subject to receiving discovery from Home Depot regarding all of the Accused Products they have used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '529 patent that are infringed and the Accused Products for which The Regents seeks relief.

55.     Home Depot's infringement of the '529 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

**COMPLAINT**

56.     The Regents has complied with the requirements of 35 U.S.C. § 287(a) by, without limitation, undertaking reasonable efforts to ensure that its licensees for the '529 patent complied with the requirements of 35 U.S.C. § 287(a).  Thus, Home Depot had constructive notice of the '529 patent by operation of law.

57.     Home Depot had actual notice of the '529 patent no later than January 12, 2018.

58.     Defendants' infringement of the '529 patent has been willful since no later than the earlier date any of Home Depot had actual knowledge of or were willfully blind to the existence of the '529 patent, which will be the subject of discovery.

59.     Defendants deliberately infringed the '529 patent and acted recklessly and in disregard of the '529 patent by using, importing, selling, and offering for sale products that infringe the '529 patent with knowledge of the '529 patent and of the likelihood that the '529 patent is infringed by Defendants' acts.* The risks of infringement were known to Defendants and/or were so obvious under the circumstances that the infringement risks should have been known.* Defendants also failed to take remedial action to avoid infringing the '529 patent, for example, by not exclusively importing, selling, and offering for sale products from licensed suppliers and by rejecting opportunities to license the '529 patent offered by The Regents.* Defendants have persisted in infringing conduct despite a high likelihood that their actions constituted infringement of the '529 patent and that the risk of infringement was known or should have been known to Defendants. Accordingly, Defendants have willfully infringed and/or continues to willfully infringe the '529 patent.

60.     Defendants' actions after becoming aware of their infringement, constitute egregious behavior beyond typical infringement.

## CLAIM II: INFRINGEMENT OF THE '464 PATENT

61.     The Regents repeats and realleges the allegations of the foregoing

- 21 -

**COMPLAINT**

Paragraphs 1 through 60 as if fully set forth herein.

62.     Home Depot has infringed at least one claim of the '464 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with using, offering to sell, selling, and/or importing into the United States the Accused Products.

63.     Attached as Exhibit M is a claim chart demonstrating infringement of the '464 patent by a representative Accused Product sold by Home Depot, namely, the Feit Vintage ST19, 11W/75W, Warm Light, Dimmable, Clear Glass, Medium Base E27 (Store SKU #1004534844) (UPC #017801 181388). Exhibit M is for illustrative pleading purposes only and is not intended to limit the patent claims asserted or the Accused Products at issue in this case. Subject to receiving discovery from Home Depot regarding all of the Accused Products they have used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '464 patent that are infringed and the Accused Products for which The Regents seeks relief.

64.     Home Depot's infringement of the '464 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

65.     The Regents has complied with the requirements of 35 U.S.C. § 287(a) by, without limitation, undertaking reasonable efforts to ensure that its licensees for the '464 patent complied with the requirements of 35 U.S.C. § 287(a).  Thus, Home Depot had constructive notice of the '464 patent by operation of law.

66.     Home Depot had actual notice of the '464 patent no later than October 7, 2019.

67.     Defendants' infringement of the '464 patent has been willful since no later than the earlier date any of Home Depot had actual knowledge of or were willfully blind to the existence of the '464 patent, which will be the subject of

**COMPLAINT**

discovery.

68.     Defendants deliberately infringed the '464 patent and acted recklessly and in disregard of the '464 patent by using, importing, selling, and offering for sale products that infringe the '464 patent with knowledge of the '464 patent and of the likelihood that the '464 patent is infringed by Defendants' acts.* The risks of infringement were known to Defendants and/or were so obvious under the circumstances that the infringement risks should have been known.* Defendants also failed to take remedial action to avoid infringing the '464 patent, for example, by not exclusively importing, selling, and offering for sale products from licensed suppliers and by rejecting opportunities to license the '464 patent offered by The Regents.* Defendants have persisted in infringing conduct despite a high likelihood that their actions constituted infringement of the '464 patent and that the risk of infringement was known or should have been known to Defendants. Accordingly, Defendants have willfully infringed and/or continues to willfully infringe the '464 patent.

69.     Defendants' actions after becoming aware of their infringement, constitute egregious behavior beyond typical infringement.

## CLAIM III: INFRINGEMENT OF THE '854 PATENT

70.     The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 69 as if fully set forth herein.

71.     Home Depot has infringed at least one claim of the '854 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with using, offering to sell, selling, and/or importing into the United States the Accused Products.

72.     Attached as Exhibit N is a claim chart demonstrating infringement of the '854 patent by a representative Accused Product sold by Home Depot, namely, the Feit Vintage ST19, 11W/75W, Warm Light, Dimmable, Clear Glass, Medium Base E27 (Store SKU #1004534844) (UPC #017801 181388). Exhibit N is for

**COMPLAINT**

illustrative pleading purposes only and is not intended to limit the patent claims asserted or the Accused Products at issue in this case. Subject to receiving discovery from Home Depot regarding all of the Accused Products they have used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '854 patent that are infringed and the Accused Products for which The Regents seeks relief.

73.     Home Depot's infringement of the '854 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

74.     The Regents has complied with the requirements of 35 U.S.C. § 287(a) by, without limitation, undertaking reasonable efforts to ensure that its licensees for the '854 patent complied with the requirements of 35 U.S.C. § 287(a).  Thus, Home Depot had constructive notice of the '854 by operation of law.

## CLAIM IV: INFRINGEMENT OF THE '213 PATENT

75.     The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 74 as if fully set forth herein.

76.     Home Depot has infringed at least one claim of the '213 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with using, offering to sell, selling, and/or importing into the United States the Accused Products.

77.     Attached as Exhibit O is a claim chart demonstrating infringement of the '213 patent by a representative Accused Product sold by Home Depot, namely, the Feit Vintage ST19, 11W/75W, Warm Light, Dimmable, Clear Glass, Medium Base E27 (Store SKU #1004534844) (UPC #017801 181388). Exhibit O is for illustrative pleading purposes only and is not intended to limit the patent claims asserted or the Accused Products at issue in this case. Subject to receiving discovery from Home Depot regarding all of the Accused Products they have used,

- 24 -

**COMPLAINT**

offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '213 patent that are infringed and the Accused Products for which The Regents seeks relief.

78.     Home Depot's infringement of the '213 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

79.     The Regents has complied with the requirements of 35 U.S.C. § 287(a) by, without limitation, undertaking reasonable efforts to ensure that its licensees for the '213 patent complied with the requirements of 35 U.S.C. § 287(a).  Thus, Home Depot had constructive notice of the '213 patent by operation of law.

## CLAIM V: INFRINGEMENT OF THE '557 PATENT

80.     The Regents repeats and realleges the allegations of the foregoing Paragraphs 1 through 79 as if fully set forth herein.

81.     Home Depot has infringed at least one claim of the '557 patent under 35 U.S.C. §§ 271(a) and/or 271(g), literally and/or under the doctrine of equivalents, in connection with using, offering to sell, selling, and/or importing into the United States the Accused Products.

82.     Attached as Exhibit P is a claim chart demonstrating infringement of the '557 patent by a representative Accused Product sold by Home Depot, namely, the Feit Vintage ST19, 11W/75W, Warm Light, Dimmable, Clear Glass, Medium Base E27 (Store SKU #1004534844) (UPC #017801 181388). Exhibit P is for illustrative pleading purposes only and is not intended to limit the patent claims asserted or the Accused Products at issue in this case. Subject to receiving discovery from Home Depot regarding all of the Accused Products they have used, offered to sell, sold, or imported into the United States, The Regents will disclose its contentions regarding the claims of the '557 patent that are infringed and the Accused Products for which The Regents seeks relief.

**COMPLAINT**

83.     Home Depot's infringement of the '557 patent has caused and will continue to cause The Regents substantial monetary harm, for which The Regents is entitled to receive compensatory damages in an amount to be determined at trial, but in no event less than a reasonable royalty.

84.     The Regents has complied with the requirements of 35 U.S.C. § 287(a) by, without limitation, undertaking reasonable efforts to ensure that its licensees for the '557 patent complied with the requirements of 35 U.S.C. § 287(a).  Thus, Home Depot had constructive notice of the '557 patent by operation of law.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, The Regents respectfully requests the Court to enter judgment in favor of The Regents and against Home Depot as to all claims asserted herein as follows:

A.     Granting a judgment that Home Depot has infringed the Asserted Patents in violation of 35 U.S.C. §§ 271(a) and/or 271(g);

B.     Ordering Home Depot to pay to The Regents damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by Home Depot, together with pre-judgment and post-judgment interest and costs as fixed by the Court, in accordance with 35 U.S.C. § 284;

C.     Increasing damages awarded to The Regents in this case to three times the damages amount found by the jury or assessed by the Court pursuant to 35 U.S.C. § 284 due to the willfulness of Home Depot's infringement;

D.     Finding the case to be exceptional under 35 U.S.C. § 285 and granting an award of The Regents' reasonable fees; and

E.     Granting The Regents such other and further relief as this Court may deem just and proper.

- 26 -

**COMPLAINT**

1

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 and Central District of
California L.R. 38-1, The Regents demands a trial by jury on all issues so triable.

Dated: August 31, 2020          NIXON PEABODY LLP


By: /s/ Shawn G. Hansen
Shawn G. Hansen

Attorneys for Plaintiff
THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA

- 27 -

**COMPLAINT**